# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

STACEY JO COFFEY,                    )
                                     )
    Plaintiff,               )
                                     )
      v.                  )        Case No. 1:11-cv-0159-TWP-TAB
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
    Defendant.               )

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Stacey Jo Coffey ("Ms. Coffey") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. § 416(i). For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

## I. BACKGROUND

Ms. Coffey was born on December 24, 1969, making her 37 years old at the time she filed her application for Social Security Disability and 40 years old at the time the Administrative Law Judge rendered his decision. R. at 18, 227. She has an eleventh grade education. R. at 43.

### A. Procedural History

Ms. Coffey filed applications for Social Security Disability Insurance and for Social Security Supplemental Security Income Disability Benefits on August 23, 2007. R. at 99-103, 104-107. She claimed to have symptoms including irregular heart rate, high blood pressure, panic attacks and depression. R. at 57. Her applications were denied both initially and after

reconsideration. R. at 54-57, 63-65. On January 4, 2010, Ms. Coffey appeared with counsel and testified at a hearing before Administrative Law Judge Albert Velasquez ("the ALJ"). R. at 26-47. On May 28, the ALJ issued his decision finding that Ms. Coffey was not disabled because she was able to perform jobs that existed in significant numbers in the national economy. R. at 10-19. On December 8, 2010, the Appeals Council denied review of the ALJ's decision. R. 1-3. At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Subsequently, Ms. Coffey filed the appeal which is before the Court today.

**B.     Medical History**

The first medical event on the record revolves around Ms. Coffey's visit to Dr. Teresita Ramilo, M.D. ("Dr. Ramilo"), on July 27, 1997. R. at 365-370. Ms. Coffey visited Dr. Ramillo after overdosing on Excedrin PM because of depression. R. at 365. She was diagnosed with an episode of major depression and said to have a Global Assessment of Functioning ("GAF") of 25 at admission – but 55 at discharge.[1] R. at 370. On January 10, 2006, and again on April 29, 2006, Ms. Coffey visited Dr. Anthony P. Gannon, M.D. ("Dr. Gannon"), with complaints of lower and right side back pain. R. at 214.

On September 14, 2006, Ms. Coffey visited Dr. Gannon after nearly having a syncopal episode. R. at 215. Dr. Gannon concluded that she likely suffered an acute anxiety episode or panic attack. R. at 215. He prescribed Ativan. R. at 215. On July 11, 2007, Dr. Gannon noted that Ms. Coffey's panic attacks persisted and the Ativan was not working. R. at 219. He then prescribed Paxil as a substitute. R. at 219. On August 6, 2007, Dr. Gannon noted that Ms. Coffey continued to suffer panic attacks and added Xanax to her regime of medication. R. at 219. On September 24, 2007, Ms. Coffey was examined by Dr. Shah, M.D. ("Dr. Shah"). R. at

---

[1] GAF is a numerical scale that is used by mental health physicians. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).

254-257.  Dr. Shah opined that Ms. Coffey suffered from generalized anxiety disorder and panic attacks.  R. at 256.  On October 15, 2007, Dr. Bettye L. Pate ("Dr. Pate"), a psychologist, examined Ms. Coffey.  R. at 258-262.  Dr. Pate found that Ms. Coffey was able to bathe, groom, cook and dress herself without assistance.  R. at 259.  Further, Dr. Pate found that Ms. Coffey was able to visit her family frequently.  R. at 259.  However, Ms. Coffey was unable to shop by herself.  R. at 260.

When evaluating her mental capacity, Dr. Pate found that Coffey was oriented to time, place, and person.  R. at 259.  Coffey reported no suicidal tendencies.  R. at 260.  She could correctly complete serial threes, but not serial sevens.[2]  R. at 261.  After the examination, Dr. Pate opined that Coffey suffered from panic disorder with agoraphobia, generalized anxiety disorder, and dysthymia.  R. at 261.  Further, Dr. Pate opined that Coffey was unlikely to require assistance managing her funds.  R. at 261.  Finally, Dr. Pate placed Coffey's GAF score at 51.  R. at 262.

On October 23, 2007, state agency examiner Dr. F. Kladder, Ph.D. ("Dr. Kladder"), reviewed Ms. Coffey's case file and signed a Psychiatric Review Technique Form ("PRTF").  R. at 266-283.  Dr. Kladder opined that although Ms. Coffey suffered from anxiety-related and affective disorders, her condition did not meet or equal any listed impairment.  Further, Dr. Kladder opined that Ms. Coffey suffered from dysthymia, generalized persistent anxiety, and recurrent severe panic attacks.  R. at 269, 271.  Dr. Kladder concluded that Ms. Coffey was mildly limited in daily living activities; moderately limited in her social functioning abilities; mildly limited in maintaining concentration and pace; moderately limited in her ability to maintain attention for extended periods of time; and moderately limited in her ability to function

---

[2]  The serial threes and serial sevens test is a test where the patient starts at a number (usually thirty and one hundred respectively) and subtracts 3 or 7 from that number until he or she reaches the lowest whole number attainable.  *See* R. at 264.  The test is timed and scored to measure the patient's mental capacity.  *See* R. at 263-64.

properly among the public.  R. at 276, 280-81.  Overall, Dr. Kladder opined that Ms. Coffey's disorder was very treatable and that she was able to work at a reasonable pace in an environment with few people.  R. at 282.  Dr. Kladder's opinion was later affirmed by Dr. B. Randall Horton on January 3, 2008.  R. at 285.

On May 27, 2008, Glenda Wendling, RN, FPN ("Nurse Wendling"), examined Ms. Coffey.  R. at 306-07.  Ms. Coffey complained of back and foot pain.  R. at 306.  An examination found that Ms. Coffey could bend eighty degrees and stoop with light difficulty and pain in the left lumbar muscle area.  R. at 306.  Ms. Coffey was diagnosed with general lumbosacral neuritis, general panic disorder and primary insomnia.  R. at 306.  On August 6, 2008, Nurse Wendling examined Ms. Coffey again.  R. at 310.  During the examination, Ms. Coffey exhibited tenderness in her back and left sciatic area of her buttocks.  R. at 310.  However, her knees showed no swelling or redness.  R. at 310.  Nurse Wendling concluded that Ms. Coffey suffered from anxiety disorder, bilateral knee pain, general lumbralsacral neuritis and general degenerative disc disease.  R. at 310.  On September 3, 2008, Ms. Coffey reported that her back had improved due to physical therapy.  R. at 312.  Additionally, Nurse Wendling planned to wean Ms. Coffey off of Xanax.  R. at 312.

On October 6, 2008, Ms. Coffey visited Nurse Wendling after an emergency room visit complaining of severe joint pain.  R. at 313.  However, Ms. Coffey exhibited full range of motion in her wrists and elbows with no tenderness or swelling.  R. at 313.  She also exhibited no tenderness, redness or swelling in her knees or ankles; however, she exhibited pain with range of motion.  R. at 313.

On November 15, 2008, Ms. Coffey met with Glenn Ballengee ("Mr. Ballengee") for an initial evaluation at the Pain Management Center in Columbus, Indiana.  R. at 300.  Mr.

Ballengee opined that although Ms. Coffey's neck, lungs, gait and extremities were fine, she did suffer from mild tenderness in her low back.  R. at 300.  Ms. Coffey received MRI results of her back on December 3, 2008.  R. at 315.  The results showed some arthritic facet changes and hypertrophy of the ligamenta flava in the L-3, L-4 and L-5 vertebrate.  R. at 315.  Otherwise, the results were unremarkable.  R. at 315.

On December 31, 2008, Ms. Coffey reported to the emergency room complaining of sciatica pain.  R. at 375.  Dr. Pamela K. Peak, M.D. ("Dr. Peak"), the examining physician, found that Ms. Coffey exhibited no pain to the midline of the lower lumbar spine or the thoracic or cervical spine; normal gait; no stepoff or deformities; no leg shortening; normal straight leg raise; and pain along the left lower buttocks into the left hip.  R. at 375.  Dr. Peak diagnosed Ms. Coffey with radicular lower back pain.  R. at 375.  The next day, Ms. Coffey was prescribed Vicodin and Deltasone before being released.  R. at 380.

On January 22, 2009, Dr. Bradley Strausberg, M.D. ("Dr. Strausberg"), a pain specialist, examined Ms. Coffey.  R. at 292.  Dr. Strausberg opined that Ms. Coffey suffered from low back pain and lumbar facet arthropathy.  R. at 292.  To combat this, Dr. Strausberg provided Ms. Coffey with Marcaine, Lidocaine, and Kenalog injections in her back.  R. at 293.

On February 22, 2009, Ms. Coffey returned to the emergency room.  R. at 383.  She complained of neck, back and trunk pain.  R. at 383.  Dr. Peak opined that Ms. Coffey continued to suffer from lower back pain and issued her a prescription for Norco and Ultram.  R. at 386. Ms. Coffey returned to the emergency room on February 25, 2009 complaining of further back pain.  R. at 388.  The treating physician, Dr. Bogmila Kopczynski, M.D. ("Dr. Kopczynski"), opined that Ms. Coffey exhibited symptoms of chronic back pain.  R. at 390.  After the

examination, Ms. Coffey left without signing her discharge papers because she did not like the doctor. R. at 390.

On March 15, 2009, Ms. Coffey reported to the emergency room after suffering a headache. R. at 394. Dr. Kopczynski opined that Ms. Coffey was suffering from migraines and prescribed her a hydrocortisone base. R. at 397. On March 25, 2009, Ms. Coffey followed up with Dr. Strausberg. R. at 291. Again, Dr. Strausberg injected Ms. Coffey with Marcaine, Lidocaine and Kenalog. R. at 291. Ms. Coffey returned to the emergency room on May 25, 2009 complaining of leg pain. R. at 400. Dr. Robert Donathan, M.D. prescribed Verapamil, Cymbalta, and Atarax in order to ease her pain. R. at 402. On June 6, 2009, Ms. Coffey presented to the emergency room with complaints of chest pain. R. at 406. Dr. Kopczynski opined that she had suffered a panic attack. R. at 409. He ordered x-rays of Ms. Coffey's lungs. The results were unremarkable. R. at 412. On June 9, 2009, Dr. Strausberg injected Ms. Coffey's back with Bupivacaine, Lidocaine and Kenolag. R. at 289. Ms. Coffey continued these injections on July 7, 2009. R. at 434.

On July 15, 2009, Ms. Coffey returned to the emergency room after experiencing more chest pains. R. at 417. She claimed to have suffered a severe anxiety attack two weeks prior to her visit. R. at 416. Dr. Kopczynski ordered x-rays of her chest; the results were normal. R. at 433.

On July 17, 2009, Dr. Sherif Shamaa, M.D. ("Dr. Shamaa"), a Disability Determination Bureau physician, examined Ms. Coffey. R. at 345. Dr. Shamaa opined that Ms. Coffey suffered from lower back pain, a history of irregular heart rate, and a history of panic attacks. On August 6, 2009, Ms. Coffey received x-ray results on her knees, thoracic spine and lumbar spine. R. at 349-51. The results concluded that although her knees were normal, she suffered

from a mild curvature in her thoracic spine and minimal degeneration of her lumbar spine.  R. at 349-51.

On August 26, 2009, Dr. Russ Rasmussen ("Dr. Rasmussen"), a psychologist, examined Ms. Coffey.  R. at 354-58.  After a thorough examination, Dr. Rasmussen found that her mental residual functional capacity to be moderately impaired.  R. at 357.  Further, Dr. Rasmussen opined that Ms. Coffey suffered from major depression and panic disorder with agoraphobia.  R. at 357.  He placed her GAF at 54.  R. at 357.  On August 27, 2009, Dr. Debra Marshino, M.D., examined Ms. Coffey's mental capacity.  R. at 360-62.  She also opined that Ms. Coffey suffered from panic disorder with agoraphobia and generalized anxiety disorder.  R. at 362.  Dr. Marshino placed Ms. Coffey's GAF at 52.  R. at 362.

On September 8 and October 13, 2009, Ms. Coffey received more injections from Dr. Strausberg.  R. at 438, 440.  Ms. Coffey returned to the emergency room on October 12, 2009 complaining of back pain.  R. at 430.  As a result, Dr. John M. Scandrett, M.D. opined that Ms. Coffey suffered chronic back pain and ordered her to continue with her Vicodin regimen.  R. at 432.  On November 11, 2009, Dr. Strausberg noted that, although injections relieved Ms. Coffey of pain, the relief does not last long enough.  R. at 443.  He recommended that she undergo lumber radiofrequency.  R. at 443.

## C.    The Administrative Hearing

### 1.    Coffey's Testimony

At the hearing on January 4, 2010, Ms. Coffey testified that she had worked at an auto center and in several warehouses in the past.  R. at 30-32.  However, she was dismissed from nearly all of her jobs due to anxiety.  R. at 32-34.  She also testified that she has severe panic attacks when around others.  R. at 32.  The attacks caused her to either abruptly quit her job or

take unscheduled breaks. R. at 32. Further, she testified that her anxiety keeps her from going to the grocery store, or Wal-Mart, or even a psychiatrist. R. at 35-36. According to Ms. Coffey, her panic attacks include clamminess, difficulty breathing and tightness in the chest. R. at 32. Additionally, she testified that she feels that other people are staring at her or coming after her. R. at 36. Finally, she testified that she suffers from depression. According to her testimony, she cries and sleeps all the time and is often forgetful. R. at 37-38.

Ms. Coffey testified that she suffers from back and leg pain. R. at 38. She claimed to feel the pain constantly, from her back to her knees. R. at 38-39. She testified that she is only able to stand for ten to fifteen minutes at a time before having to rest and reported that she could walk no more than a quarter of a block. R. at 39. Ms. Coffey testified that because of leg pain, she was unable to sit for more than fifteen minutes at a time. R. at 39. Additionally, she testified that she was unable to lift more than ten pounds. R. at 39.

### 2. The Vocational Expert's Testimony

Robert Barber, the vocational expert, ("the VE"), classified Ms. Coffey's previous jobs. R. at 44. He testified that Ms. Coffey had previously worked as a detailer, a medium, unskilled position with a Service Vocational Preparation ("SVP"): 2; a warehouse worker, a medium, unskilled position with a SVP: 2, and a press operator, a medium, unskilled position with an SVP: 2. R. at 44. Next, the ALJ asked the VE a hypothetical question: whether a person of Ms. Coffey's age, education and work experience who is able to lift and carry twenty pounds – ten pounds frequently – stand and walk for six of eight hours, and sit for six of eight hours; is unable to climb ropes, ladders or scaffolds, crawl or kneel, work at unprotected heights, work near dangerous moving machinery, operate a motor vehicle, work around open flames or large bodies of water, work in an environment requiring more than superficial interaction with the general

public, supervisors or co-workers is able perform substantial gainful activity in the national economy. R. at 44-45. The VE answered affirmatively. He testified that this hypothetical person could work as a packing line worker, a stock clerk, or an assembler. R. at 45.

Upon cross-examination, Coffey's attorney asked the VE if the ALJ's hypothetical person would still be able to perform substantial gainful activity if that person has panic attacks around others that would cause her to take unscheduled breaks, is limited to standing no more than fifteen minutes, cannot walk more than one fourth of a block, cannot sit more than twenty minutes at a time or lift more than ten pounds. R. at 45. The VE answered this question negatively. R. at 45.

## II.  STANDARD OF REVIEW

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a five step process in determining whether a claimant is disabled. This process is evaluated as follows:

1. The Court considers the claimant's work activity, if any. If he/she is doing substantial gainful activity, the Court will find that he/she is not disabled.

2. The Court considers the medical severity of the claimant's impairment(s). If he/she does not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the Court will find that the claimant is not disabled.

3. The Court also considers the medical severity of the claimant's impairment(s). If he/she does have an impairment(s) that meets or equals one of the Court's listings in appendix 1 of this subpart and meets the duration requirement, the Court will find that the claimant is disabled.

4. The Court considers an assessment of the claimant's residual functional capacity and his/her past relevant work. If he/she can still do her past relevant work, the Court will find that the claimant is not disabled.

5. The Court considers an assessment of the claimant's residual functional capacity and his/her age, education, and work experience to see if he/she can make an adjustment to other work. If the claimant can make an adjustment to other work, the court will find that he/she is not disabled. If the claimant cannot make an adjustment to other work, the Court will find that he/she is disabled.

20 C.F.R. § 404.1520(a)(4). Although the burden of proof is on the claimant for the first four steps, it shifts to the Commissioner for the fifth. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

The Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997); *Knight*, 55 F.3d at 313. In reviewing the ALJ's findings, the Court may not "decide facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ." *Nelson*, 131 F.3d at 1234. The ALJ's decision will be reversed only if his findings are not supported by substantial evidence or if the ALJ "applied an erroneous legal standard." *Id.* Although a mere scintilla of evidence is insufficient to affirm the ALJ's findings, only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is required. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992) (quoting *Pitts v. Sullivan,* 923 F.2d 561, 654 (7th Cir. 1991)). Where reasonable minds may differ as to whether the claimant is disabled, the court will defer to the ALJ. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

Although the ALJ need not evaluate every piece of testimony and evidence submitted, he must articulate some legitimate reason for his decision based on relevant evidence. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Further, "[an] ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his

analysis of the evidence [must] allow the [Court] to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The Court will "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

## III. <u>DISCUSSION</u>

### A. The ALJ's Findings

As reported in his decision, the ALJ found that Ms. Coffey met the insured status requirements of the Social Security Act through May 31, 2012. R. at 10. Additionally, the ALJ found that Ms. Coffey had not engaged in substantial gainful activity since March 6, 2007. R. at 12.

The ALJ concluded that Ms. Coffey suffered from the following severe impairments: anxiety/depression; gastroesophageal reflux disease; hypertension; obesity; tobacco addiction; low back pain/lumbar facet arthropathy; and SI joint dysfunction. R. at 12. However, he found that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). R. at 15. The ALJ reasoned that Ms. Coffey's musculoskeletal impairment was insufficient because she presented no evidence of nerve root compression with neuro-anotomic distribution of pain. R. at 15. Furthermore, he reasoned that Ms. Coffey's cardiovascular disorder did not satisfy listings in the appendix. He also found that her digestive disorder was responsive to treatment. R. at 15.

Additionally, the ALJ reasoned that Ms. Coffey's mental impairments are not paired with the necessary ancillary findings. R. at 15. The ALJ pointed to evidence that Ms. Coffey was able to drive, meet her father and take her son to school. R. at 15. Further, the ALJ gave

substantial weight to the opinions of state examiners Dr. Kladder and Dr. Horton. R. at 15. Relying on those opinions, the ALJ concluded that Ms. Coffey merely possessed moderate difficulties maintaining concentration and social functioning; mild restriction of daily living activities; and no decompensatory episodes of extended duration. R. at 15.

Next, the ALJ evaluated Coffey's residual functional capacity ("RFC"). R. at 15-16. The ALJ found that Ms. Coffey was able to perform light work that included lifting up to twenty pounds occasionally and carrying ten pounds frequently. R. at 15. He found that she could stand or walk for a total of six hours out of an eight hour work day and also sit for six of eight hours. R. at 15. However, the ALJ determined that she could not climb ropes, ladders or scaffolds; crawl or kneel; work around unprotected heights, dangerous machinery, open flames or large bodies of water; or operate a motor vehicle. R. at 16. Additionally, the ALJ found that Ms. Coffey was only able to complete simple repetitive tasks and was limited to only superficial interaction with the general public, managers and co-workers. R. at 16.

Although the ALJ found that Ms. Coffey's disabilities could reasonably be expected to produce the symptoms she claimed to suffer in her testimony, he found her testimony to be not fully credible because it was inconsistent with the RFC assessment. R. at 17. The ALJ reasoned that Ms. Coffey's pain symptoms were not credible because they were not consistent with the medical evidence. R. at 17. Further, the ALJ reasoned that her panic attacks improved with the use of medication; additionally, she was not seeking any emergency medical help as would be expected by someone who experienced weekly panic attacks. R. at 17. Finally, the ALJ determined that Ms. Coffey was able to perform household chores, take her son to school, and meet with family members. R. at 17.

The ALJ found that Ms. Coffey was unable to return to her previous job, but could still perform substantial gainful activity in the national economy.  R. at 17-18.  Because Ms. Coffey's ability to do the full range of light work was impeded by additional limitations, the ALJ relied on the VE's testimony that a person sharing Ms. Coffey's skills, experience, age and limitations would be able to work as a packing line worker, stock clerk, or assembler.  R. at 18.  By contrast, the ALJ ruled out the hypothetical posed by Ms. Coffey's attorney because there was "no foundation" for his question.  R. at 18.  Accordingly, the ALJ found that Ms. Coffey was not disabled.  R. at 19.

**B.      Analysis**

**1.      The ALJ's Step Three Analysis**

Ms. Coffey contends that the ALJ erred in finding that her combined impairments did not meet or medically equal Listing 12.06 or Listing 12.04 of 20 C.F.R. 404 Subpart P, Appendix 1.  Ms. Coffey claims that her combined impairments meet or equal the listed disorders of Section 12: Mental Disorders.  20 C.F.R. 404 Subpart P, Appendix 1.  Appendix 1 listed mental disorders consist of seven broad mental disorder classifications.  *Id.*  Within each classification, there is a list of required medical findings (Paragraph A criteria), impairment-related functional limitations (Paragraph B criteria), and, in some categories, additional functional criteria (Paragraph C criteria).  *Id.*  In order to meet or medically equal a listed disability in this category, a claimant must show that he or she meets a category's Paragraph A criteria, and its Paragraph B or Paragraph C criteria.  *Id.*

Ms. Coffey contends that her combined impairments meet or equal Listing 12.06: Anxiety Related Disorders or Listing 12.04:  Affective Disorders.  Under 12.06, the claimant

must show that he or she suffers from at least one medically documented impairment. 20 C.F.R. 404 Subpart P, Appendix 1. Ms. Coffey claims that she suffers from two:

> A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

> Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week.

*Id.* Under Listing 12.06, the claimant must also show that his or her medically documented finding results in at least two listed behaviors. *Id.* Ms. Coffey claims that her impairments cause three of these behaviors: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; and (3) marked difficulties in maintaining concentration, persistence, or pace.

In order to meet the requirements under Listing 12.04, the claimant must show that he or she suffers from at least one medically documented impairment. 20 C.F.R. 404 Subpart P, Appendix 1. Ms. Coffey claims that she suffers from depressive syndrome characterized by sleep disturbance, decreased energy, difficulty concentrating or thinking, thoughts of suicide, and delusion. Additionally, the claimant must also show that his or her listed impairment results in at least two listed behaviors. *Id.* Ms. Coffey claims that her impairments result in (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; and (3) marked difficulties maintaining concentration, persistence, or pace.

In support of this argument, Ms. Coffey contends that the ALJ erroneously failed to (1) acknowledge medical evidence that supported her Step 3 claim and (2) summon a medical examiner to testify whether Coffey's impairments meet or medically equal the listed disabilities. Both arguments will be considered in turn.

### a. Acknowledging Contrary Medical Evidence

Coffey contends that the ALJ failed to consider medical evidence contrary to his Step Three analysis. An ALJ must consider all relevant evidence when making his or her decision. *See Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000) (holding the ALJ must develop a "full and fair record"). Additionally, the ALJ may not "cherry-pick" medical opinions that support his or her opinion while ignoring opinions that do not. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). If the ALJ fails to acknowledge evidence supporting the claimant's disability, then he or she fails to build a logical bridge from the evidence to his or her conclusion. *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000).

Ms. Coffey relies on testimony from Drs. Ramilo, Gannon, Pate, Rasmussen and Marshino. Specifically, she claims that the testimony from the above mentioned doctors provides evidence contrary to the ALJ's Step Three conclusion, but was ignored by the ALJ. The Court disagrees. Although, the ALJ did not acknowledge certain evidence from these doctors' conclusions, the doctors' conclusions supported the ALJ's Step Three conclusion that Ms. Coffey's combined impairments do not meet or medically equal any listed impairments.

The ALJ did not err in summarizing Dr. Gannon's opinions. On the contrary, the ALJ fully acknowledged Dr. Gannon's opinion that Ms. Coffey suffered an acute anxiety episode or panic attack. Additionally, the ALJ acknowledged Ms. Coffey's treatment history under Dr. Gannon starting from when she began taking Antivan to when she was prescribed an increased dosage of Paxil and Xanax.

Drs. Pate, Rasmussen and Marshino all conducted psychiatric evaluations on Ms. Coffey. In doing so, the doctors noted all of Ms. Coffey's subjective complaints and made their own objective observations. As a result, the doctors unanimously opined that Ms. Coffey possessed a

GAF score of above fifty. GAF scores of fifty and above indicate moderate difficulty in social or occupational functioning. *DSM-IV*-TR 34. As mentioned previously, in order to show that he or she has a listed impairment under 12.06 or 12.04, the claimant must show that he or she exhibits marked limitations. However, Ms. Coffey's GAF scores signal that she suffers from moderate limitations; this falls a step below what the limitations require in Part B of 12.06 and 12.04 of 20 C.F.R. 404 Subpart P, Appendix 1. *See* 20 C.F.R. 404.1520(c)(4) ("We will use the following five-point scale: None, mild, moderate, marked, and extreme."). Therefore, these doctors' examinations reasonably supported the ALJ's Step Three analysis and did not need to be specifically acknowledged in his opinion as contrary evidence.

It is true that Dr. Ramilo assessed Ms. Coffey's GAF at 25 for three days at Valle Vista Hospital in 1997. However, the Court finds that this evidence is too dated to be relied on individually. *See Smith,* 231 F.3d at 433 (ALJ erred in relying on outdated x-rays); *Thompson v. Sullivan*, 933 F.2d 581, 587 (7th Cir. 1991) (ALJ erred in relying on outdated medical evidence). Ms. Coffey makes no attempt to describe how this GAF score is linked to the others. In Dr. Ramilo's assessment, Ms. Coffey attributed her suicide attempt to a failed relationship. R. at 365. However, she has attributed her most recent bout with agoraphobia and depression to her mother's death in 2004 on several occasions. R. at 30, 254, 260, 354, 360. In fact, Ms. Coffey admitted to feeling fine before 2002. R. at 354. There is absolutely no link between her 1997 hospital visit and her current mental limitations. *See Knox v. Astrue*, 327 Fed. Appx. 652, 656-57 (7th Cir. 2009) (claimant must link evidence to current limitations). Additionally, Ms. Coffey only retained her low GAF score for three days. When she was discharged from the Valle Vista Hospital, her GAF score was 55. Therefore, the ALJ did not need to specifically acknowledge Dr. Ramilo's evaluation.

Although Ms. Coffey's GAF scores may indicate a more severe condition than the ALJ acknowledged,[3] this analysis concerns only whether the ALJ ignored evidence contrary to his Step Three conclusion.  Accordingly, the ALJ appropriately acknowledged the medical evidence on the record in finding that Ms. Coffey's impairments did not meet or medically equal the listed impairments at 12.04 or 12.06 of 20 C.F.R. 404 Subpart P, Appendix 1.

### b.  Consulting a Medical Examiner

Ms. Coffey contends that the ALJ erred in refusing to allow a medical examiner to testify whether her combined impairments medically equaled a Subpart P, Appendix 1 Listed impairment.  "An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).  An ALJ must rely on a medical expert's opinion when finding a claimant does not meet or equal a listed impairment.  SSR 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996).  In some situations, this requires that the ALJ hear additional evidence from a medical examiner.  *See Green v. Apfel,* 204 F.3d 780, 781 (7th Cir. 2000) (ALJ incorrectly made medical conclusions instead of consulting medical examiner).  However, when the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone.  *See Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009) (holding that the record was sufficient to forgo use of a medical examiner).  Particularly, "[w]hen an [ALJ] … finds that an individual's impairment(s) [are] not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by [a SSA-831-U5 or SSA-832-U5 or SSA-833-U5] signed by a State agency medical or psychological consultant."  SSR 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996).  The Court finds that the ALJ met his burden in this case.

---

[3] The ALJ gave substantial weight to medical opinions that found some of Ms. Coffey's impairments to be mild.

Here, the record contained sufficient evidence for the ALJ to hold that Ms. Coffey's combined impairments did not meet or medically equal Listing 12.04 or Listing 12.06. It contained medical reports from multiple psychologists who examined Ms. Coffey over a period of three years. Specifically, the ALJ relied on state examiners Dr. Kladder and Dr. Horton. Both opined Ms. Coffey's impairments did not meet or equal any listed impairments. In doing so, the doctors completed Disability Determination Transmittal Forms similar to the SSA-831-U5.

Ms. Coffey relies heavily on *Barnett*, but her reliance is misplaced. *See Barnett,* 381 F.3d at 664. In *Barnett*, the ALJ did not consult any medical expert at all in holding that the claimant's impairments did not meet or equal a listed impairment. *Id.* at 670-71. Instead, the ALJ grounded his findings based on his own layman opinion. *Id.* at 671. By contrast, the ALJ in this case grounded his findings in medical opinions written by certified state physicians. R. at 15.

Ms. Coffey contends that Dr. Kladder's and Dr. Horton's opinions are outdated. She argues that the ALJ should have heard updated testimony from a medical expert. However, when making a Step Three decision, an ALJ is not required to request an updated medical opinion from a medical expert unless (1) "[N]o additional medical evidence is received, but in the opinion of the [ALJ] the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable"; or (2) "When additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent." SSR 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996); *cf. Smith*, 231 F.3d at 433.

In this case, additional medical evidence was received after Dr. Kladder and Dr. Horton examined Ms. Coffey, but the evidence further affirmed their opinions that her impairments do not meet Listing 12.04 or Listing 12.06. For example, Dr. Rasmussen opined that her remaining

functional capacity was moderately impaired. Although this is a degree higher than the state physicians' opinions, it is not enough to meet or equal the listed conditions. Further, it seems obvious that the ALJ did not feel that updated medical evidence would change the state examiners' minds. Therefore, the ALJ did not err in refusing to hear testimony from a medical expert.

### 2. Ms. Coffey's Credibility

Ms. Coffey contends that the ALJ erred in finding her testimony not fully credible. The Court defers to an ALJ's credibility determination and shall overturn it only if it is "patently wrong." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported … can the finding be reversed."). The ALJ's "decision [must be made] in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011). Thus, the ALJ's opinion will be reversed "only if [he] grounds his credibility finding in an observation or argument that is unreasonable or unsupported." *Prochaska* 454 F.3d at 738 (quoting *Sims,* 442 F.3d at 538).

The ALJ's credibility determination was not patently wrong. Each assertion the ALJ made was supported by a fact in the record. For example, the ALJ noted that Ms. Coffey complained of debilitating back pain, but images of her lumbar spine were mostly unremarkable. Additionally, the ALJ noted that Ms. Coffey claimed to suffer from debilitating anxiety, but she is able to visit family, take her son to school and prepare meals. All of the ALJ's reasons for finding that Ms. Coffey's testimony was not credible were supported by specific findings and

evidence in the record.  Therefore, the ALJ's opinion with respect to his credibility determination was not patently wrong.

### 3.    The ALJ's Step Five Analysis

Ms. Coffey contends that the ALJ erred in his Step Five analysis.  Specifically, she claims that the ALJ omitted all evidence of her mental limitations.  Additionally, she claims that the ALJ's hypothetical was flawed for the same reasons.  Each argument will be considered in turn.

### a.  Ms. Coffey's Residual Function Capacity

Ms. Coffey contends that the ALJ erred in assessing her RFC.  She contends that the ALJ's analysis omits important medical evidence concerning her work limitations.  The Court disagrees.

An ALJ "is not required to address every piece of evidence but is instead required to build a logical bridge from the evidence to [his] conclusion."  *Similia*, 573 F.3d at 516. However, "an ALJ may not ignore an entire line of evidence contrary to [his] findings." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel,* 179 F.3d 507, 514 (7th Cir. 1999)).  Doing so renders a court unable to determine whether the ALJ considered the record as a whole.  *Id.*

Ms. Coffey relies on her GAF scores to show that her impairments are "quite severe." However, as mentioned previously, her GAF scores show that she exhibits moderate impairments. Accordingly, in his opinion, the ALJ found that Ms. Coffey suffered "moderate functional limitations from [her] medically determinable impairments."  The ALJ incorporated those impairments into Ms. Coffey's RFC.  Because the ALJ's RFC analysis afforded Ms. Coffey the same limitations as the GAF scores that she relies on, substantial evidence supports

his decision. *See Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003) (GAF scores may be useful in a claimant's RFC assessment but are not essential); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (although GAF scores are not essential to an ALJ's accuracy, they may be of "considerable help" when formulating a claimant's RFC).

In addition, Ms. Coffey contends that the ALJ omitted evidence that all of her former employment opportunities had been terminated due to panic attacks. However, the ALJ found that Ms. Coffey had trouble with the public and, in order to maintain employment, required no more than superficial contact with people. Additionally, the ALJ heard Ms. Coffey's testimony that she was terminated because of her panic attacks and found her to be not fully credible. Therefore, the ALJ considered this evidence.

### b. The ALJ's Hypothetical

Lastly, Ms. Coffey contends that the ALJ failed to give full consideration to her impairments in his hypothetical. In her argument, Ms. Coffey relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). In *O'Connor-Spinner*, the ALJ failed to pose any phrase that stipulated the claimant's concentration, persistence and pace limitations in his hypothetical to the vocational expert. *Id.* at 618-19. Similarly, Ms. Coffey claims that the ALJ omitted information concerning her anxiety and depression in his hypothetical. She argues that omission deprived the VE of important information that is necessary in determining whether she could perform substantial gainful activity in the national economy. The Court disagrees.

"If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). However, "the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he

accepts as credible." *Simila,* 573 F.3d at 521 (quoting *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007)).   Finally, the ALJ is not required to use specific terminology in his or her hypothetical so long as the phrasing "specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner,* 627 F.3d at 619.

Although the ALJ agreed that Ms. Coffey had some problems with groups of people, he did not accept the notion that her anxiety prevented her from having any contact with people. Instead, the ALJ relied on Dr. Kladder's evaluation finding that Ms. Coffey could work in a setting that required little interaction with groups of people.   Accordingly, the ALJ determined her employment required no more than superficial interaction with the general public, co-workers, or supervisors in his hypothetical.

The Court finds that the ALJ's language "suppl[ied] the VE with information adequate to determine whether [Coffey] could perform jobs in the national economy." *O'Connor-Spinner,* 627 F.3d at 618-19.   The ALJ's hypothetical was reasonably consistent with Dr. Kladder's opinion that Ms. Coffey can maintain only little interaction with groups of people.   It excludes work that requires any meaningful conversation or interaction with others during work time.   In fact, the hypothetical arguably goes further than Dr. Kladder's evaluation by limiting interaction with all people, not just the public.   Therefore, substantial evidence supports the language of the ALJ's hypothetical.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, this final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.   Final judgment shall be entered accordingly.

SO ORDERED.     03/27/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov